**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    Plaintiff,<br><br>    v.<br><br>**QUENTEL REED,**<br><br>    Defendant. | Case No.: 12-CR-161 YGR<br><br>**INTERIM ORDER RE: EMERGENCY MOTION FOR COMPASSIONATE RELEASE**<br><br>DKT. NO. 43, 45 |

Defendant Quentel Reed is currently in the custody of the Bureau of Prisons ("BOP") and incarcerated at the federal correctional institution ("FCI") in Lompoc, California. Reed moves for an order modifying his sentence pursuant to 18 U.S.C. section 3582(c)(1)(A). The Court has jurisdiction to grant such relief and seeks a further response from the parties concerning the terms on which relief may be granted.

Reed's charges stemmed from a February 9, 2012 incident when Reed was arrested in possession of 59 grams of cocaine base and a loaded 9mm pistol containing a high capacity magazine. In a plea agreement entered November 1, 2012, Reed admitted to possessing a firearm in furtherance of drug trafficking in violation of 18 U.S.C. section 924(c)(1)(A). At the sentencing hearing, Reed and the Government jointly recommended a below-Guidelines sentence of 180 months' imprisonment, to which he was sentenced on March 7, 2013. Reed's release date currently is estimated to be April 13, 2025.[1] Reed has been in federal custody since March 1, 2012.

Reed requests that the Court reduce his sentence to time served with the balance of the period of his original sentence imposed as a period of supervised release with home confinement and such other conditions as the Court deems just. The Government opposes the motion.

---

[1] Reed contends that, with additional custody credits and other likely conditions, he is likely to be released as early as October 2023. (Reply, Dkt. No. 52, at 9.)

## I. APPLICABLE STANDARD

Pursuant to the amendments enacted by the First Step Act of 2018 ("FSA"), section 3582(c)(1)(A) permits a defendant to move for modification of a term of imprisonment after either: (1) the defendant has fully exhausted administrative rights to appeal a failure of the BOP to bring a motion for sentence reduction on the defendant's behalf, or (2) "the lapse of 30 days from the receipt of such a request by the warden of defendant's facility, whichever is earlier."[2] On such a motion, the court:

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> **(i)** extraordinary and compelling reasons warrant such a reduction….

Section 3582 directs the Court to consider the factors in 18 U.S.C. section 3553(a), consistent with applicable policy statements of the United States Sentencing Commission.[3] The relevant United States Sentencing Guidelines states that "extraordinary and compelling reasons" include: (1)

---

[2] The Government agrees that at least 30 days have elapsed since Reed made his request to the warden of his facility, FCI Lompoc. (Opposition, Dkt. No. 48, at 8.) Given this, the Government's inclusion of lengthy arguments in its briefing concerning the court's inability to grant relief in the absence of exhaustion is unnecessary, and borders on misleading. Likewise, the Government's argument that the Court is "without power" to "designate Reed to home confinement" but may only make a non-binding recommendation to the Bureau of Prisons (*id*. at 7) is a misdirection. Reed's motion under section 3582(c)(1)(A) made no such request.

[3] The parties dispute whether defendant must fit within one of the categories enumerated in section 1B1.13 cmt. n.1(A)-(C) in order to be eligible for relief. Promulgated prior to the enactment of the FSA, the relevant United States Sentencing Guidelines states that "extraordinary and compelling reasons" include: (1) medical conditions which diminish the ability of the defendant to provide self-care in prison, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. USSG § 1B1.13, Application Note 1(A). The Guidelines also require that the defendant not pose a danger to the safety of the community. *Id.* § 1B1.13(2).
The continued applicability of those Guidelines post-FSA is a subject of conflicting debate. *See United States v. Rodriguez*, 424 F. Supp. 3d 674, 681–82 (N.D. Cal. 2019) ("This court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements [after the enactment of the FSA], courts 'can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant' compassionate release." (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). The Court need not decide the issue since it finds consideration of the factors stated in the existing Guidelines useful in its exercise of discretion herein.

1  medical conditions which diminish the ability of the defendant to provide self-care in prison, (2)
2  age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling
3  reasons that exist either separately or in combination with the previously described categories.
4  USSG § 1B1.13, Application Note 1(A).  The Guidelines also require that the defendant not pose a
5  danger to the safety of the community. *Id.* § 1B1.13(2).[4]

6  The defendant bears the initial burden to put forward evidence establishing extraordinary
7  and compelling reasons warranting a sentence reduction.  *United States v. Greenhut*, 2020 WL
8  509385, at *1 (C.D. Cal. Jan. 31, 2020) (citing *United States v. Sprague*, 135 F.3d 1301, 1306-07
9  (9th Cir. 1998)).

10 **II.    DISCUSSION**

11 Reed argues that extraordinary and compelling reasons to modify his sentence exist because
12 (i) he has medical conditions—Type II diabetes, hypertension, and obesity—which put him at
13 greater risk for severe illness from COVID-19; and (ii) he is needed to care for his spouse who has
14 epilepsy, is recovering from back surgery, and is solo parenting their elementary school-age son.
15 Moreover, Reed contends that the current COVID-19 pandemic, and the resulting serious health
16 risks present in FCI Lompoc due to inability to maintain social distancing and sanitary conditions,
17 demonstrate extraordinary circumstances in combination with the other two factors he has
18 established.[5]

19 The Government contends that Reed's medical records show his diabetes and hypertension
20 have been resolved for several years, and he has not needed treatment or medication for either

---

[4] The current Guidelines were promulgated prior to the enactment of the FSA.  The continued applicability of those Guidelines post-FSA is a subject of conflicting authorities.  *See United States v. Rodriguez*, 424 F. Supp. 3d 674, 681–82 (N.D. Cal. 2019) ("This court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements [after the enactment of the FSA], courts 'can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant' compassionate release." (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)).  The Court need not decide the issue since it finds consideration of the factors stated in the existing Guidelines useful in its exercise of discretion herein.

[5] As of June 12, 2020, Lompoc FCI has had 927 inmates test positive for COVID-19 out of the 988 inmates tested (93%).  *See* BOP, available at https://www.bop.gov/coronavirus/  (last visited 6/12/20).

3

condition since that time. Moreover, the Government argues, Reed has not demonstrated that, even if those conditions were still present, that they are of a kind or degree that they would put Reed at greater risk of severe illness, should he be exposed to COVID-19.

The Centers for Disease Control (CDC) have stated that people of any age who have serious underlying medication conditions may be at higher risk for severe illness from COVID-19, including hypertension, diabetes, heart disease, prior stroke, chronic lung disease, and chronic kidney disease. CDC's guidance to date has been mixed as to whether specific types or degrees of the listed medical conditions are associated with increased individual risk of severe illness.[6] Further, other than a history of stroke, the CDC appears not to have addressed the question of whether a history of these diseases, or disease in remission, is nevertheless associated with increased risk.

Reed's medical records contain a history of some medical conditions associated with higher risk. While some notes in the record indicate that the conditions are apparently resolved or controlled without medication at this juncture, Reed's recent medical records submitted in connection with the Government's surreply under seal show fasting and non-fasting blood glucose levels that suggest his diabetes may no longer be in remission.[7] Nonetheless, these risk factors alone, while a source of concern, do not establish in themselves "extraordinary and compelling" reasons for a reduction of his sentence.

---

[6] CDC's guidance states, on the one hand, that "[h]eart disease, hypertension, prior stroke, diabetes, chronic lung disease, and chronic kidney disease have all been associated with increased illness severity and adverse outcomes." *See* CDC, *Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19)* available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (updated 5/15/20, last visited 6/12/20). At the same time, the CDC states that it is unclear whether hypertension alone is a risk factor, and that groups at higher risk include those with *pulmonary* hypertension as opposed to *essential* hypertension, and *severe* obesity as opposed to obesity. *See* CDC, *Clinical Questions About COVID-19: Questions and Answers*, at https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Hypertension (updated 5/12/20, last visited 6/12/20); *Groups at Higher Risk for Severe Illness*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited 6/12/20).

[7] The Court notes that Reed's original, handwritten motion stated that the staff at FCI Lompoc knew of his diabetes but "chose to leave it unchecked." (Dkt. No. 43 at 1).

4

Reed offers the additional evidence in conjunction with the medical issues that his family circumstances support a reduction in sentence because he is needed to care for his wife. The evidence shows that defendant's wife has chronic disabilities which impair her ability to complete even basic daily activities without assistance, and lives with her young son. She declares that her older son is 19 and will no longer be living at her home full time because he is starting college.[8] These circumstances give rise to additional burdens in light of the shelter-in-place orders and concomitant uncertainties in school and childcare brought on by the pandemic. These facts, taken together, rise to a level sufficiently compelling to support a reduction of sentence under the circumstances.

Finally, the Court has considered whether Reed's release would pose a danger to the safety of the community, as well as the sentencing factors set forth in section 3553(a). The Court has reviewed its file in this matter thoroughly, including the Probation Office's initial presentencing report submitted and the more current BOP records submitted. Reed has no history of violence or violent offenses. He has made efforts to address his drug addiction issues while incarcerated and done well. He earned his GED and participated in vocational and life skills programming. He has had only one disciplinary violation in the eight years he has been in prison. These facts weigh in favor of granting Reed's motion for compassionate release as to the issue of danger.

The Government has raised concerns about the adequacy of Reed's release plan. Reed has indicated his plan is to reside with his aunt and uncle in their home and provide home care assistance for his wife through In-Home Supportive Services, seeking additional employment only if permitted by the Court.

The Court is inclined to grant the motion but is similarly concerned about the release plan. Accordingly, as soon as practicable, but no later than **Monday, June 15, at 4:00 p.m.**, Reed shall

---

[8] Although given the opportunity to file a surreply to address Reed's arguments regarding his family circumstances as a basis for release, the Government did not address this issue substantively. The Government only raised a question as to the nature of Reed's relationship to Sheila Johnson-Reed. (*See* Surreply, Dkt. No. 55, at 5 n. 1.) The Court accepts Ms. Johnson-Reed's representation in her letter to the Court that the defendant is her husband and the father of her children. (*See* Reply, Dkt. No. 52-1, Appx. B.)

submit a statement of release conditions and a release plan, including a proposed form of order setting forth terms he believes are appropriate. Within **24 hours** of such supplemental filing, the Government may submit any comments on defendant's proposed order or its own proposed order concerning the terms of release. The Court will issue a final order forthwith.

      I<small>T</small> I<small>S</small> S<small>O</small> O<small>RDERED</small>.

Date: June 13, 2020

                                              Y<small>VONNE</small> G<small>ONZALEZ</small> R<small>OGERS</small>
                                              U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE</small>